UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA A. MACPHEE, | ) | CASE NO. 1:19-cv-711 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) | |
| DEFENDANT. | ) | |

Plaintiff Debra MacPhee ("MacPhee" or "plaintiff") appeals from the decision of defendant Andrew Saul, Commissioner of Social Security ("Commissioner"), denying her applications for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The issues are fully briefed and ripe for determination. (Doc. No. 14, Plaintiff's Brief on the Merits ["Pl. Br."]; Doc. No. 17, Commissioner's Brief on the Merits ["Def. Br."].) For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.  BACKGROUND**

Administrative Law Judge ("ALJ") Susan G. Giuffre found that plaintiff's diabetes mellitus and affective disorders were severe impairments that did not "meet[] or medically equal[] the severity of one of the listed impairments described in 20 C.F.R. Pt. 404, Subpt. P, App'x. 1." (Doc. No. 12, Transcript ["Tr."] at 95–96.[1]) Accordingly, she determined that plaintiff:

> has the residual functional capacity ["RFC"] to perform medium work as defined in 20 C.F.R. [§§] 404.1567(c) [2017] and 416.967(c) [2017] except, she could climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; frequently stoop; and has the capacity to

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

>understand and remember simple tasks and instructions; is capable of sustaining concentration and persistence to complete simple, routine tasks; a capacity for superficial interaction with others; and a capacity to work in a static work environment without fast paced production demands and where assistance or guidance would be available if needed.

(*Id.* at 98.) While the ALJ found plaintiff could not perform any past relevant work, she could perform jobs that exist in significant numbers in the national economy. (*Id.* at 105.) Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. (*Id.* at 107.)

## II. LAW AND ANALYSIS

### A. Standard of Review

Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If there is substantial evidence to support Commissioner's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

**B.     Commissioner appropriately considered the opinions of David Brager, Shari Aldridge, Leslie Martinez, and the State agency psychologists.**

The ALJ is only required to "explain the weight given to opinions from" non-acceptable medical sources and non-medical sources. 20 C.F.R. § 404.1527(f)(2) (2017). Still, the ALJ must consider all relevant evidence in an individual's case record. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 378 (6th Cir. 2013). Therefore, the ALJ "should explain the weight given to opinions from [non-acceptable medical sources and non-medical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a plaintiff or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case." SSR 06–03P, 2006 WL 2329939, at *6 (Aug. 9, 2006) (rescinded) (emphasis omitted). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *Marijanovic v. Comm'r of Soc. Sec.,* No. 17-1282, 2017 WL 8231367, at *1 (6th Cir. Oct. 30, 2017).

The ALJ's consideration of non-acceptable medical sources and non-medical sources opinions should include the following factors: 1) examining relationship, (2) treatment relationship (including, the length of treatment relationship and frequency of examination and the nature and extent of the treatment relationship), (3) supportability (how much relevant evidence the source has presented to support the medical opinion), (4) consistency with the record, (5) specialization of the source, and (6) any other relevant factors brought to the ALJ's attention. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(f)(1); 404.1527(c)(1)–(6).

For example, in *Barnard v. Berryhill*, No. 1:17-CV-02575, 2019 WL 1242856 (N.D. Ohio Mar. 18, 2019), the ALJ properly considered a non-medical source's opinion and accorded it less weight by explaining the opinion and its inconsistencies with other evidence in the record. *Id.* at

3

\*8. The court rejected the plaintiff's argument that "the ALJ's reasoning is flawed and relies on an inaccurate account of the evidence" as:

> tantamount to an invitation for this court to reweigh the evidence and to assign greater weight to [the non-medical source's] opinion. In other words, [plaintiff] does not argue that the ALJ failed to *explain* why she gave less weight to Ms. Kelly's opinion, but is rather arguing that the reasons given are not good reasons as they involve an interpretation of the record with which she disagrees. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence… . [T]he court finds no deficiency with the level of explanation the ALJ provided regarding [the source's] opinion.

*Id.* (emphasis in original).

Plaintiff argues that Commissioner did not properly consider the opinions of David Brager ("Brager"), Shari Aldridge ("Aldridge"), Leslie Martinez ("Martinez"), and the State agency psychologists. The Court will address plaintiff's arguments as to each source below.

But more generally, plaintiff argues that the ALJ "played doctor and substituted her judgment for the findings contained in the record." (Pl. Br. at 937.) This is a mischaracterization of the ALJ's decision. The ALJ assigned less weight to the opinions of Brager, Aldridge, and Martinez after applying the factors listed in 20 C.F.R. § 404.1527 to those opinions. "Although an ALJ may not substitute his [or her] opinion for that of a physician," "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

Plaintiff's reliance on *Boulis-Gasche v. Comm'r of Soc. Sec*, 451 F. App'x 488 (6th Cir. 2001) is misplaced because in that case the ALJ himself found that the plaintiff's medical condition had improved without citing objective medical evidence or medical source opinions. *Id.* at 494.

4

Here, the ALJ determined what weight to give to particular sources in determining plaintiff's RFC. Accordingly, the ALJ did not impermissibly "play doctor."

### i. David Brager

Plaintiff claims Brager's opinion that plaintiff "had severe depression, fatigue, decreased energy, decreased motivation, hypersomnia, poor appetite and increased irritability" "[was] discounted by the ALJ … contrary to the regulations." (Pl. Br. at 932.) Brager is a certified nurse practitioner. (*Id.*) Commissioner responds that the ALJ properly weighed Brager's opinion based on the factors listed in 20 C.F.R. § 404.1527(c)(1)–(6). (Def. Br. at 963–4.)

Commissioner has the better argument. As the ALJ found, (Tr. at 104), Brager was not an acceptable medical source. *See Meuzelaar v. Comm'r of Soc. Sec.,* 648 F. App'x 582, 584 (6th Cir. 2016) ("a nurse is not an 'acceptable medical source'"). "Acceptable medical sources" are: Licensed physicians, Licensed or certified psychologists, Licensed optometrists, Licensed podiatrists, and Qualified speech-language pathologists. 20 C.F.R. § 404.1513(a) (2013).[2] Because a certified nurse practitioner is not included in that list, it is not an "acceptable medical source." Therefore, Brager was not a treating source. 20 C.F.R. § 404.1527(a)(2). *See LaRiccia v. Comm'r of Soc. Sec.,* 549 F. App'x 377, 385 (6th Cir. 2013) (holding that a medical source that was not

---

[2] 20 C.F.R. § 404.1513 (2013) was revised effective March, 27, 2017 to include licensed advance practice registered nurses in the list of "acceptable medical source." But "the revisions are expressly not retroactive." *Conway v. Berryhill*, No. 1:18-CV-00218, 2018 WL 7079488, at *5 (N.D. Ohio Dec. 17, 2018), *report and recommendation adopted*, No. 1:18CV00218, 2019 WL 481166 (N.D. Ohio Feb. 7, 2019) (emphasis omitted). "Acceptable medical source" includes "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (only with respect to claims filed … on or after March 27, 2017)." 20 C.F.R. § 404.1502(a)(7) (2017). Because plaintiff filed her claim on July 28, 2016, the revision does not apply.

included in the 20 C.F.R. § 404.1513(a) list of acceptable medical sources could not be a treating source).

Accordingly, the ALJ was only required to explain what weight she gave to Brager's opinion and consider the opinion based on the factors. The ALJ gave "partial weight" to Brager's statement for three reasons. (Tr. at 104.) First, she found that Brager only met with plaintiff for "monthly visits beginning November 2017 prior to authoring [his] opinion in February 2018." (*Id.*) Second, she found "Brager's clinical notes lack reference to objective signs supporting" his opinion. (*Id.*) Third, she found Brager's opinion was inconsistent with treating psychiatrist Dr. Wilhelm's records. (*Id.*) Because the ALJ explained what weight she gave to Brager's opinion and why she did so—based on the treatment relationship, supportability, and consistency factors— there is substantial evidence to support her treatment of Brager's opinion. *See Gayheart,* 710 F.3d at 378 (holding that the ALJ's reasons "sufficiently support the little weight that" he accorded the non-acceptable medical source's opinion, when the ALJ found the source only treated the plaintiff for five months, which went to length of treatment, and the "opinion relie[d] on [the plaintiff's] subjective claims rather than on detailed clinical data, which goes to the supportability of the opinion").

        ii.        **Shari Aldridge and Leslie Martinez**

Plaintiff argues that the statements and observations by her sister, Aldridge, and non-attorney representative, Martinez, which "indicated that [plaintiff] was unable to get out of bed to function normally" "were discounted by the ALJ … contrary to the regulations." (Pl. Br. at 932). Commissioner responds that Aldridge and Martinez were not acceptable medical sources and their opinions were inconsistent with plaintiff's daily activities and objective medical evidence. (Def. Br. at 961–62.)

6

Again, Commissioner has the better argument. As to Aldridge, the ALJ correctly found that she "is not an acceptable medical source" (Tr. at 104) because siblings qualify as "other sources[.]" SSR 06–03P, 2006 WL 2329939, at *2 (Aug. 9, 2006) (rescinded) (emphasis omitted). The ALJ explained that she gave "partial weight to [] Aldridge's Third Party Function Report" because "key portions of her report conflict with the record." (Tr. at 104.) More specifically, "her description of [plaintiff] becoming angry and yelling does not align with her cooperative and pleasant presentation during Dr. Wilhelm's office visits," and Aldridge's "report that [plaintiff] does not shop appears inconsistent with [plaintiff's] frequenting of merchants to obtain material goods[.]" (*Id.*)

As to Martinez, the ALJ noted that "[t]he nature of [plaintiff's] relationship with [] Martinez is unclear as this individual does not appear across psychiatric or psychotherapy records …. [T]here is no indication that [] Martinez is an acceptable medical source or clinician." (*Id.*) Plaintiff does not argue that Martinez is an acceptable medical source. Martinez describes herself as an "SSI Ohio Specialist" with a Master of Science in Social Administration. During the hearing she acted as plaintiff's non-attorney representative. (*Id.* at 589, 400.) Social workers and case managers are not acceptable medical sources. *See Payne v. Comm'r of Soc. Sec.,* 402 F. App'x 109, 119 (6th Cir. 2010); *Steed v. Colvin,* No. 4:15-CV-01269, 2016 WL 4479485, at *8 (N.D. Ohio Aug. 25, 2016). Accordingly, Martinez is either a non-acceptable medical source or a non-medical source. The ALJ then noted she "gives little weight to [] Martinez's submission" for the same reasons as Aldridge and because "[t]he degree of dysfunction conveyed and representation of the plaintiff's apparent inability to concentrate on tasks conflicts with Dr. Wilhelm's findings." (Tr. at 104.)

7

The ALJ noted how much weight she assigned to each of the non-medical source opinions and justified that determination based on the consistency and supportability factors. Therefore, there is substantial evidence to support the ALJ's determination of how much weight to accord both Aldridge and Martinez.

### iii. State Agency Consulting Psychologists

When the State agency physician's opinion is given prior to subsequent evidence arising, the Sixth Circuit "require[s] some indication that the ALJ at least considered these facts before giving greater weight to" the State agency physician's opinion. *Fisk v. Astrue,* 253 F. App'x 580, 585 (6th Cir. 2007); *see also Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 408–09 (6th Cir. 2009). This requirement is satisfied so long as the ALJ "adequately reviewed the complete case record." *Strickland v. Saul,* No. 1:18-CV-1664, 2019 WL 4141534, at *7 (N.D. Ohio Aug. 30, 2019); *see also Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009).

Plaintiff argues that "the ALJ accorded great weight to the State agency reviewing psychologists and only partial weight to the medical source statement from D. Brager," (Pl. Br. at 932), even though the State agency psychological consultants "did not have the opportunity to review the Function Report completed by [plaintiff's] sister or the assessment completed by David Brager … [or] the records from The Centers for Families and Children, which were the basis for David Brager's assessment." (*Id.* at 935.) Commissioner responds that "[t]he ALJ properly considered the subsequent evidence," which satisfies the regulatory requirements. (Def. Br. at 965.)

Commissioner is correct. The ALJ explained that she gave "great weight to the State agency psychological consultants' assessments" because their opinions were consistent with each other and with Dr. Wilhelm's reports. (Tr. at 103.) And, as detailed above, the ALJ considered

8

Brager's, Aldridge's, and Martinez's opinions according to the factors in 20 C.F.R. § 404.1527(c)(1)–(6) and assigned them weight in her analysis. (*Id.* at 104.) She also cited to the reports from the Centers for Families and Children in her decision. (*Id.* at 100–02, 104.) Therefore, there is substantial evidence to support the ALJ's determination of how much weight to accord the State agency psychologists.

### C. Commissioner properly evaluated plaintiff's diabetes.

An argument that "consist[s] only of [plaintiff's] assertion that the issue had not been properly addressed by the ALJ" without "any attempt [by the plaintiff] at any level to develop an argument as to how the ALJ's treatment of [the plaintiff's] issues was improper" is considered waived. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010).

Plaintiff argues, in a single sentence, that "[t]he ALJ also failed to consider the requirements of Social Security Ruling 14-2p, evaluating diabetes." (Pl. Br. at 937.) But, as Commissioner notes, plaintiff "does not identify any portion of the Ruling that the ALJ allegedly violated, or cite any supporting evidence." (Def. Br. at 966.) Therefore, the Court considers plaintiff to have waived this issue.

### D. Commissioner's credibility determination is supported by substantial evidence.

"It is for the [ALJ], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). For that reason, the Sixth Circuit gives an "ALJ's determinations of credibility great weight and deference," *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003), so long as the determination is supported by substantial evidence. *Cruse,* 502 F.3d at 542.

"[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones,* 336 F.3d at 476.

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). Still, the ALJ must "explain which of an individual's symptoms [she] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [her] conclusions." *Id.* at *8.

"Other evidence" includes "medical history, opinions, and statements about treatment" and "[s]tatements [claimant] or others make about [claimant's] impairment(s), [claimant's] restrictions, [claimant's] daily activities, [claimant's] efforts to work, or any other statements [claimant] make[s] to medical sources during the course of examination or treatment, or … during interviews, on applications, in letters, and in testimony in … administrative proceedings." 20 C.F.R. § 404.1512(b)(1)(ii)–(iii) (2015). "An ALJ may also consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 (6th Cir. 1997).

The Sixth Circuit has consistently held that there is substantial evidence to support an ALJ's determination that a plaintiff's statements of her own symptoms are not credible when those statements are inconsistent with other statements made by the plaintiff, the plaintiff's daily activities, and objective medical evidence. *See e.g., Joseph v. Comm'r of Soc. Sec.,* 741 F. App'x 306, 312 (6th Cir. 2018); *Winslow v. Comm'r of Soc. Sec.,* 566 F. App'x 418, 422 (6th Cir. 2014);

*Schmiedebusch v. Comm'r of Soc. Sec. Admin.,* 536 F. App'x 637, 649 (6th Cir. 2013); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013); *Martin v. Comm'r of Soc. Sec.,* 170 F. App'x 369, 373 (6th Cir. 2006); *Niemasz v. Barnhart*, 155 F. App'x 836, 839 (6th Cir. 2005); *Jones,* 336 F.3d at 476; *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1030 (6th Cir. 1990).

For example, in *Cruse* the court found there was substantial evidence to support the ALJ's decision that the plaintiff's statements about symptoms were not credible because "the ALJ specifically set forth his reasons for discrediting [the plaintiff's] subjective complaints based on the medical evidence [reports from the treating physician] and inconsistencies in her testimony [statements plaintiff made about her daily activities and symptoms]." *Cruse,* 502 F.3d at 542–43.

Here, plaintiff argues that "the ALJ disregarded [her] statements about not getting out of bed or showering" even though plaintiff's medical records and treatment notes "contain notations from the treating sources as to these reported problems." (Pl. Br. at 940.) Specifically, plaintiff criticizes the ALJ for not finding that plaintiff's failure to attend a doctor's appointment "may have been related to her inability to get out of bed." (*Id.*) Commissioner responds that the ALJ's credibility determination is supported by substantial evidence because "[t]he ALJ found that [p]laintiff's statements about the intensity, persistence, and limiting effects of his [sic] impairments were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Def. Br. at 968 (internal quotation omitted).)

As in *Cruse*, the ALJ determined that plaintiff's statements about her symptoms were not credible because they were inconsistent with other evidence in the record. (Tr. at 97.) First, plaintiff's statement "that her conditions caused memory and comprehension limitations" was not credible because "clinical exams … reflect intact memory with no cognitive deficits indicative of

11

comprehensive limitations" and because plaintiff "also testified that she provided full-time care for an elderly individual, which suggests the ability to apply information." (*Id.*)

Second, plaintiff's statements about concentrating, persisting, or maintaining pace were not credible because her "outpatient records … consistently reflect a normal attention span, intact associations, and no thought abnormalities" and she did not complain about troubles with pace to her treating psychiatrist. (*Id.*)

Third, plaintiff's statements about her "inability to get out of bed most days during the week" was not credible because of her "capacity to take care of two elderly individuals, frequent stores, attend interviews, and even obtain employment" and the lack of "clinical evidence of a cognitive deficit that would impair [plaintiff's] ability to negotiate hazards in the workplace." (*Id.*; *see also Id.* at 101.)

Fourth, plaintiff's statement "that she isolates and does not like to be around others" was not credible because "[h]er pleasant and cooperative disposition during the medication management visits … indicates that she can interact with others on a consistent basis notwithstanding her affective disorders" and because "she frequents merchants to obtain material goods." (*Id.* at 97.)

Finally, the ALJ determined that plaintiff's statements about her "inability to manage her symptoms" was not credible because in the three-month interval between appointments with Dr. Wilhelm—during which time plaintiff did not attend a scheduled appointment—plaintiff did not seek "emergency room treatment to address her psychiatric symptoms." (*Id.* at 101.) The ALJ inferred that the lack of treatment during that time period indicated that plaintiff was able to manage her symptoms. (*Id.*)

The ALJ explained which of plaintiff's symptoms she found inconsistent with the evidence in the record—specifically plaintiff's statements about her daily activities, observations of plaintiff's behavior by treating physicians, and objective medical evidence—and how her evaluation of plaintiff's symptoms led to her conclusions. *See* SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016). Accordingly there is substantial evidence to support the ALJ's determination that plaintiff's statements were not credible.

### E. Commissioner satisfied his burden at Step Five of the Sequential Evaluation.

#### i. Vocational Expert Testimony

The final step of the five-step sequential evaluation process to determine if a claimant is disabled requires the ALJ to determine if the claimant "can mak[e] an adjustment to any other work." 20 C.F.R. § 404.1520(g) (2012). This involves a determination that the claimant "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L .Ed. 2d 1315 (1983)). Accordingly, the ALJ must make "a finding supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs." *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). "[S]ubstantial evidence may be produced through reliance on the testimony of a vocational expert [] in response to a hypothetical question." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

Plaintiff argues that "the ALJ did not meet her burden at Step Five of the Sequential Evaluation" because the vocational expert's ("VE") testimony was "unclear as to whether the restriction of needing assistance or guidance would be an accommodation." (Pl. Br. at 940–41.)

Commissioner responds that the VE "never said that the hypothetical matching the RFC finding ('assistance or guidance available if needed') meant an accommodated employment … . The vocational expert instead said that an individual with [p]laintiff's limitations could work." (Def. Br. at 971.) While the VE testified that "'more than periodically' revisiting job duties taught during the probationary period would be accommodated employment," "the RFC finding did not state that [p]laintiff required assistance or guidance more than periodically." (*Id.* (internal quotation and emphasis omitted).)

Commissioner's characterization of the VE's testimony is more accurate. During the hearing, the ALJ presented the VE with a hypothetical:

> Then if you would consider a person of the claimant's age, education, and that past relevant work experience who has the residual functional capacity for medium work who could climb ramps and stairs frequently. Climb ladders, ropes, and scaffolds occasionally. Frequently stoop. And who has the capacity to understand and remember simple task instructions. … [W]ho is capable of sustaining concentration and persistence to complete simple routine tasks. The capacity for superficial interaction with others. And the capacity to work in a static work environment without fast paced production demands. And where assistance or guidance would be available if needed.

(Tr. at 317.) Plaintiff has not objected to the accuracy of this hypothetical.

The VE testified that if the employee "needed to revisit job duties that were taught during the probationary period" and required monitoring "more than periodically, that would be accommodated employment." (*Id.* at 321.) But, as Commissioner contends, the ALJ's hypothetical did not include the need for assistance or guidance "more than periodically." Rather the hypothetical provided that assistance or guidance "would be available if needed." And when plaintiff's counsel asked the VE if the "assistance and guidance available if needed" constituted "a special accommodation," the VE did not say that it would. (*Id.* at 318.) Instead, the VE

14

responded that the issue was whether employers would have somebody available to provide assistance and guidance if needed. (*Id.*)

Plaintiff's argument that the VE's testimony is unclear does not support remanding the case because her lawyer questioned the VE during the hearing. *See Sims v. Comm'r of Soc. Sec.,* 406 F. App'x 977, 982 (6th Cir. 2011) (affirming the ALJ's decision because while the VE's "testimony could have been further refined … plaintiff's counsel had the opportunity to cross-examine [the VE], but asked only one question and did not probe the deficiency now identified on appeal."); *Kepke v. Comm'r of Soc. Sec.,* 636 F. App'x 625, 636 (6th Cir. 2016) (holding the claimant could not challenge the VE's testimony on appeal when the claimant's counsel had the opportunity to question the VE as to his response to a hypothetical question during the hearing but failed to do so); *Baus v. Acting Comm'r of Soc. Sec.,* No. 3:16CV00740, 2017 WL 1190959, at *9 (N.D. Ohio Mar. 30, 2017) (holding that plaintiff's failure to "clarify the VE's response at the administrative hearing" "is not grounds for objecting to the Magistrate Judge's recommendation or the ALJ's ultimate decision, but rather, should have been raised at the administrative level"); *Kennedy v. Comm'r of Soc. Sec.,* No. 17-CV-14206, 2019 WL 442130, at *1 (E.D. Mich. Feb. 5, 2019) (holding that the plaintiff's failure "to cross-examine the vocational expert … at the administrative hearing … forfeit[ed] any implied argument that the ALJ's reliance on the VE's [testimony] was unfounded"). Accordingly, the ALJ satisfied her burden at step five of the sequential evaluation.

### ii. Grid Rule

Finally, plaintiff argues that because she "was over fifty-five years of age at all relevant times, had a high school education, and did not have any transferable skills, Appendix 2 to Subpart P of Part 404, the Medical Vocational Guidelines, Grid Rule 202.06 would provide for a finding of disabled." (Pl. Br. at 942.) Commissioner responds that Grid Rule 202.06 does not apply

because it "assumes that [p]laintiff is limited to light work," but "[t]he ALJ found that [p]laintiff could perform medium work." (Def. Br. at 973.)

The Commissioner is correct and plaintiff misunderstands the regulation. The ALJ concluded that plaintiff "has the residual functional capacity to perform medium work" with certain limitations. (Trs. at 98.) According to Appendix 2 to Subpart P of Part 404, the Medical Vocational Guidelines, Grid Rule 202.06 does not apply to plaintiff.

### III. CONCLUSION

For the foregoing reasons, the Court affirms Commissioner's decision to deny plaintiff's application for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income.

**IT IS SO ORDERED**.

Dated: July 20, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**